**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| FRANCO FASOLI (A/K/A "JAZ"), NICOLAS SANTIAGO ROMERO ESCALADA (A/K/A "EVER") AND DEREK SHAMUS MEHAFFEY (A/K/A "OTHER"), | ) ) ) ) ) | |
| | ) | Case No. _____ |
| Plaintiffs, | ) ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) ) | |
| VOLTAGE PICTURES, LLC, THE ZANUCK CO. D/B/A ZANUCK INDEPENDENT, MEDIAPRO PICTURES, WELL GO USA INC., AMPLIFY RELEASING, DAVID WARREN, TERENCE VANCE GILLIAM, AND JOHN DOES 1-10. | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiffs FRANCO FASOLI (A/K/A "JAZ"), NICOLAS SANTIAGO ROMERO ESCALADA (A/K/A EVER") and DEREK SHAMUS MEHAFFEY (A/K/A "OTHER") (collectively, "**Plaintiffs**"), by and through their attorneys, complain against Defendants VOLTAGE PICTURES, LLC, THE ZANUCK COMPANY D/B/A ZANUCK INDEPENDENT, MEDIAPRO PICTURES, WELL GO USA INC., AMPLIFY RELEASING, DAVID WARREN, TERENCE VANCE GILLIAM and JOHN DOES 1-10 (collectively, "**Defendants**") as follows:

## NATURE OF THE ACTION

1.     This is an action for copyright infringement, pursuant to the U.S. Copyright Act, 17 U.S.C. § 101 *et seq*., and to address violations of state law.  Plaintiffs seek preliminary and permanent injunctive relief and other equitable relief; an order enjoining Defendants from further distribution of a motion picture film or any related promotional materials incorporating an

4814-5568-7196.1

infringing artwork, and directing Defendants to surrender for destruction all infringing materials; and damages, costs and fees.

2.      This action arises from, *inter alia*, Defendants' blatant copying of Plaintiffs' original and distinctive artwork.  Each of the Plaintiffs is a visual artist of international renown, and the collaborative artwork in question, a famous, large-scale painted mural created in 2010 and on permanent public display on Fitz Roy Street in Buenos Aires, Argentina (the "**Copyrighted Artwork**"), is protected by a copyright registration issued pursuant to the laws of Argentina, dated November 15, 2013.

3.      In violation of U.S. and international law, Defendants—a crew of longstanding Hollywood "insiders" led by repeat infringer Terry Gilliam—have blatantly and intentionally infringed, and are continuing to infringe, Plaintiffs' intellectual property in the Copyrighted Artwork, by copying the work and using it in connection with the promotion and distribution of Defendants' motion picture film, *The Zero Theorem*, which has already been released in foreign countries and is due to be released in the U.S. in a few weeks' time.

## PARTIES

1.      Plaintiff Franco Fasoli, known widely by the pseudonym "**Jaz**," an individual, is a professional artist and citizen of Argentina, residing in Buenos Aires, Argentina.

2.      Plaintiff Nicolas "Nico" Romero, known widely by the pseudonym "**Ever**", an individual, is a professional artist and citizen of Argentina, residing in Buenos Aires, Argentina.

3.      Plaintiff Derek Mehaffey, a/k/a "Troy Lovegates," and known widely by the pseudonym "**Other,**" an individual, is a professional artist and citizen of Canada, authorized to work in the United States and residing in San Francisco, California.

2

4.      On information and belief, Defendant Voltage Pictures, LLC ("**Voltage**") is a California limited liability company with its principal place of business located at 662 N. Crescent Heights Blvd, Los Angeles, CA 90048.

5.      On information and belief, Defendant The Zanuck Company, d/b/a Zanuck Independent ("**Zanuck**") is a California corporation with its principal place of business located at 1600 Summitridge Dr., Beverly Hills, CA 90210.

6.      On information and belief, Defendant MediaPro Pictures ("**MediaPro**") is a Romanian company, with its principal place of business located at 1st Studioului Str., Buftea, Ilfov, 070000, ROMANIA.

7.      On information and belief, Defendant Well Go USA Inc. ("**Well Go**") is a Texas corporation, with its principal place of business at 1601 E. Plano Pkwy, Plano, TX 75074.

8.      On information and belief, Defendant Amplify Releasing ("**Amplify**") is a d/b/a of Variance Films, Inc., a New York corporation, with its principal place of business at 435 West 19th Street, 4th Floor, New York, NY 10011.

9.      On information and belief, Defendant David Warren ("**Warren**"), an individual, is a citizen of the United Kingdom but maintains a place of residence in Beverly Hills, California.  Mr. Warren is represented by the Sandra Marsh talent agency, 9150 Wilshire Boulevard, Suite 220, Beverly Hills, CA 90212.

10.     On information and belief, Defendant Terence Vance Gilliam ("**Terry Gilliam**" or "**Gilliam**"), an individual, is a former U.S. citizen who renounced his citizenship and has become a naturalized citizen of the United Kingdom.  Gilliam's primary place of residence is in London, England, but he maintains significant contacts with the United States and is represented by the William Morris Agency, One William Morris Place, Beverly Hills, CA 90212.

11.     Defendants John Does 1-10 are also liable for infringement of the Plaintiffs' copyright, and their true identifies will be revealed through discovery in this matter.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 17 U.S.C. § 501 (copyright infringement), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights) and 28 U.S.C. § 1367 (ancillary jurisdiction).

13.     This Court has personal jurisdiction over Defendants because Defendants do business in this State, distribute their films and related goods throughout the State, show their films at movie theaters in this State, and market to and contract with consumers, retailers and suppliers based in this State, such that Defendants have a reasonable expectation of being haled into court in this State.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), (b) and (c) because Defendants do business in this District and Defendants are subject to personal jurisdiction in this District at the time this action is being commenced.

## PLAINTIFFS AND THEIR WORLD-FAMOUS ARTWORK

15.     Plaintiffs are each internationally famous visual artists, able to claim thousands of dollars for their work, which is in high demand and valued by collectors throughout the world.

16.     With a background in set design and scenography, Plaintiff Jaz been painting in the streets since 1999, and is one of Argentina's best known urban artists.  He often uses new materials in his art, including asphaltic paint, petrol, tar and lime.  Many of his recent artworks depict fighting scenes, featuring characters with human bodies and the heads of wild animals such as wolves and lions, influenced by "lucha libre" and other forms of organized fighting.

17.     Jaz's studio-mate, Plaintiff Ever, uses both aerosol and brush-based techniques in his work.  Although Jaz and Ever are frequent collaborators, each artist's style is unique.  For his

4

part, Ever incorporates a "painterly" style into his portraits of people, the majority of which are created as large-scale "street art" murals, completely accessible to the public. A signature of Ever's work are the brightly-patterned "thought clouds" that frequently pour out from the eyes of his subjects.

18.     Canadian artist Other's distinctive work is colorful and dynamic, combining fine-art techniques with the accessibility of urban art. Other, who is also known internationally by his alias "Troy Lovegates," works in a wide variety of media, and prefers creating his art on non-traditional media such as walls, weathered wood and books, rather than canvas. Many of his works feature portraits of individuals with wise and deeply-lined faces, expressive hands, and highly-patterned clothing that resembles a tattoo on the surface of the skin.

19.     Each of the Plaintiffs markets and sells his artwork through art galleries and art brokers throughout the world, and has an international following. Plaintiffs' individual and collaborative works have been featured by multiple print and online art publications, and have achieved significant renown. Plaintiffs' paintings regularly sell for thousands of (US) dollars each, to collectors in the U.S. and abroad, while each of the Plaintiffs is able to demand tens of thousands of dollars for his commissioned works. Plaintiffs' works have been featured in individual and group shows throughout the U.S., including in Miami, New York and Chicago. True and correct copies of the Plaintiffs' CV's are attached hereto as **Exhibits A-C**.

20.     Buenos Aires is known throughout the world for being particularly welcoming to graffiti and street artists. While in most major cities, such artists are forced to create their works in secret, in Buenos Aires, painters and muralists are free to create as they please if they have a building owner's permission, while the local government has even subsidized some of the urban murals. Accordingly, the city has become a destination for international artists as well as art lovers, with many formally organized "street art tours" available to visitors.

21.     During a 2010 visit by Other to Buenos Aires, Jaz and Ever reached out regarding a possible collaboration.  The result was that the trio joined forces to paint a mural in latex and spray-paint through an improvisational exercise, in order to create a unified work blending their three distinct styles.  The (initially untitled) Copyrighted Artwork was finished on December 24, 2010 and is located in a well-known *zona de graffiti* ("street art zone") on Fitz Roy Street, between Canard and Castillo Street, in Chacarita, Buenos Aires, Argentina.  The completed work represents a harmonious whole, but individual elements of the Copyrighted Artwork are instantly recognizable as the contributions of Other, Jaz and Ever:



22.     Plaintiffs Jaz and Ever, as citizens of Argentina, later registered the mural with the Copyright Office in Argentina, under the title *Castillo* (or "castle" in English) and effective November 15, 2013, Reg. No. 5136763.  A true and correct copy of the Argentina copyright filing is attached hereto as **Exhibit D**.

23.     The Copyrighted Artwork has achieved international recognition in the art world, and is widely recognized by the public in Argentina and abroad.  *Castillo* is so important that it is one of the few public artworks that have survived for years in that particular *zona de graffiti*.

6

24.     The Copyrighted Artwork has received favorable media attention online through a wide variety of publications.  For example, art website Graffitimundo.com prominently featured *Castillo* in a posting about collaboration between urban artists, including a picture of the three Plaintiffs working together on the mural in 2010:



(Photo captured from http://graffitimundo.com/things-we-love/collaboration/, last accessed August 12, 2014).  True and correct copies of articles and postings from other internet sites featuring the Copyrighted Artwork are attached hereto as **Composite Exhibit E**.

<u>**THE FILM AND THE INFRINGING WORK**</u>

25.     The *Zero Theorem* (the "**Film**") is a science fiction film set in a dystopian future world, and tells the story of an eccentric computer genius name Qohen Leth (played by award-winning actor Christoph Waltz), who refers to himself in plurals.  Qohen works for a company named "Mancom," run by an enigmatic figure known only as "Management" (played by Matt Damon).  The ultimate objective of Qohen's work for Mancom is to solve "The Zero Theorem," a mathematical equation, and thereby discover the meaning of life.  But along the way, he is

7

distracted by Management's teenage son, as well as a mysterious love interest named Bainsley (played by French actress Melanie Thierry). The Film also stars Tilda Swinton, David Thewlis, and Lucas Hedges. Defendant Gilliam, the Director of the Film, has called it the final part of a dystopian satire trilogy begun with 1985's *Brazil* and continued with 1995's *12 Monkeys*.

26.     The Film was shot on location in Bucharest, Romania in 2012. It was completed in 2013, and is set to be released in the U.S. via video-on-demand ("**VOD**") on August 19, 2014, and in theaters the following month.

27.     Much of the Film takes place in Qohen's home and workplace, a burnt-out chapel that has been partially converted to living quarters. The exterior of the chapel, along with an adjacent sex shop, is shown onscreen throughout the Film, and a still from the Film showing Qohen leaving the chapel is used repeatedly by the filmmakers in promotional materials. Unfortunately, however, the exterior wall of "Qohen's chapel" (shared by the sex shop) features a colorful mural that is a blatant misappropriation of Plaintiffs' Copyrighted Artwork:



28.     The infringing mural ("**Infringing Work**") the filmmakers chose to paint on "Qohen's chapel" copies each of the three main elements of the Copyrighted Artwork originally

created by the Plaintiffs, albeit in a slightly different arrangement and on a washed-out red background, rather than the brilliant blue chosen by the Plaintiffs:



**The Copyrighted Artwork**                **The Infringing Work**

9

29. The Infringing Work serves as an important backdrop to the story throughout the Film, helping to set the scene for the world created by the filmmakers. This has not gone unnoticed by reviewers. For example, one reviewer, Annalee Newitz, was shown a portion of the Film at the Comic-Con convention, and noted that "the real standout aspects" of the Film "were the incredible concept designs and worldbuilding." (*See* http://io9.com/we-saw-the-first-ten-minutes-of-terry-gilliams-new-mas-833752912; last accessed August 12, 2014). This comment, and a description of the main character's home, were accompanied by yet another copy of the still featuring the Infringing Work, no doubt supplied by the Defendants for the reviewer's use:



30.     The exterior set featuring the Infringing Work is even depicted in the "Official Trailer" for the film (the "**Trailer**"), which is available for viewing in the U.S. on Youtube.com, Imdb.com, and the Film's official websites, as this screen capture illustrates:



31.     The Defendants have registered at least two domain names related to the Film, <thezerotheorem-movie.com> (created July 19, 2013) and <zerotheoremfilm.com> (created July 8, 2014).  Each domain points to a website used to promote the Film, containing depictions of the Infringing Work and links to the Trailer.  In addition, Defendants have registered social media pages promoting the film at Facebook, Pinterest, Twitter, Youtube and Google+.  Copies of promotional materials including the Infringing Work are on display at each of these Defendant-owned properties, as shown in the example below from Pinterest:

4814-5568-7196.1



32.    In short, the Infringing Work, which plays a key part in the world brought to life by the filmmakers onscreen, is fully integrated into the Film, the Trailer and related promotional materials, and is being used extensively to market the Film to U.S. moviegoers.  Thus the scope of Defendant's unlawful use of the Infringing Work and derivatives thereof is vast.

33.    Moreover, there is no way to "cut" the Infringing Work out of the Film:







34.     To date, the Film has received generally positive reviews from the International

press and everyday moviegoers, and it won an award at the 2013 Venice Film Festival.

Nonetheless, Plaintiffs have received no credit for the use of their original Copyrighted Artwork,

and no monetary compensation from the filmmakers.   More importantly, Plaintiffs did not

13

authorize the misappropriation and unlawful copying of their work, and have no response to make when questioned about whether there is a connection between them and the Film.

## EACH DEFENDANT'S ROLE IN THE INFRINGEMENT

35.     Defendant Voltage was formed in 2005 as an international finance, production and distribution company.  Its films, including *The Hurt Locker* and *Dallas Buyers Club*, have won numerous Academy Awards.   Nicolas Chartier, a co-owner and founder of Voltage, produced *The Zero Theorem*, and Voltage is currently promoting the film on its own website (available at URL http://www.voltagepictures.com).   A still from the film displaying the Infringing Work is prominently featured on Defendant Voltage's main page about *The Zero Theorem*:



36.     On information and belief, Voltage is also the owner of the international website for the Film, available at URL http://www.thezerotheorem-movie.com.

14

37.     Dean Zanuck, a third-generation Hollywood film producer and son of the late Richard D. Zanuck, runs Defendant Zanuck Independent, and is the co-producer of the Film. Mr. Zanuck's prior films include *Get Low*, *Charlie and the Chocolate Factory, Road to Perdition, Planet of the Apes* and *Deep Impact*.  A link to the Newitz online review noted above, along with a thumbnail image of the film showing the Infringing Work, is currently being "shared" on the personal Facebook page of Mr. Zanuck:



38.     Defendant MediaPro is the largest film and TV production company in Romania, and is part of MediaPro Entertainment, itself a subsidiary of Central European Media Enterprises, a vertically integrated media and entertainment group.  A large portion of the Film was shot at MediaPro's studios, and MediaPro provided additional production support at locations throughout Romania, including the location of the Infringing Work.

39.     Defendant Amplify was formed in January 2014, as the result of a merger between Variance Films and GoDigital.  Amplify is an independent film distributor, and is responsible for the release of the Film in the United States, via VOD and in theaters.  Amplify is currently promoting the Film on its own social media pages and website (available at URL http://www.amplifyreleasing.com), where it links to the Trailer and identifies "Upcoming

15

Screenings" of the Film scheduled for mid-September, 2014. Amplify is also the owner of the website available at URL http://www.zerotheoremfilm.com, which currently includes a link to view the Trailer (containing the Infringing Work), information about screenings of the Film in September 2014, and links to pre-order the Film directly from the site, or through iTunes.

40. On information and belief, Amplify is also responsible for "The Zero Theorem US" Facebook social media fan page, which displays the Infringing Work:



41. Defendant Well Go is another independent film distribution company, and has teamed up with Amplify to distribute the Film. On information and belief, Well Go will handle U.S. distribution of the Film on DVD and Blu-Ray.

42. Defendant Warren is a seasoned art director and set designer, who served as the Production Designer for the Film. His prior work includes films such as *Snow White and the Huntsman, Hugo, Sweeney Todd,* and the *Bridget Jones* franchise. Mr. Warren was nominated for an Academy Award in connection with his production design for *The Imaginarium of Doctor Parnassus* (also directed by Defendant Gilliam). On information and belief, Warren was personally responsible for bringing Defendant Gilliam's "vision" for the Film to life, including

16

by overseeing the creation of the Infringing Work. Prior to Mr. Warren's work, the "chapel" location at 41 Strada Grigore Cobălcescu, Bucharest was just an ordinary apartment building:



43.     In November 2012, on Day 28 of principal photography for the film, Mr. Warren gave an interview to *Dreams*, the official "fanzine" for Defendant Gilliam, in front of the "chapel exterior" where the Infringing Work was painted:



David Warren in the alleyway in front of Qohen's chapel

17

(Photograph captured from http://www.smart.co.uk/dreams/ziptdw1.htm, last accessed August 12, 2014).

44. Mr. Warren discussed the "chapel exterior" during the interview, claiming that the Infringing Work was a key component of the filmmakers' "world" and explaining that the Infringing Work, which he described as their "graffiti," was important to "chang[e] the character of the alleyway to [the Film's] world":

> And now I've come here to Cobălcescu, which is where Qohen's chapel exterior is. As you can see behind me, we are still scuttling around putting things into place and painting it and dressing it, things like that. ***This is our world***. Some of it you can see, some of it we put in ourselves. Look, there's smoke there already. The apartment block was here already, I have to admit. The little chapel, we put that in. ***The graffiti is ours***, which has changed the character of the alleyway to our world, as we like to phrase it… "Terry's vision", which is very colourful in this film.

## DEFENDANT GILLIAM'S REPEATED DISREGARD FOR COPYRIGHT LAW

45. Defendant Terence Vance "Terry" Gilliam was born in Minneapolis, Minnesota in 1940. In the 1970's, he was one of the founding members of the "Monty Python" comedy troupe. He went on to become an Oscar-nominated director and screenwriter, working on many hit films, including *The Brothers Grimm, The Fisher King, Fear and Loathing in Las Vegas, Twelve Monkeys* and *Brazil*.

46. On information and belief, the idea to create the Infringing Work was Defendant Gilliam's. On further information and belief, Mr. Gilliam personally selected the location for "Qohen's chapel" and then gave Mr. Warren the direction to copy the Copyrighted Artwork during production.

47. Unfortunately, this is not the first time that Defendant Gilliam has demonstrated a blatant disrespect for copyright law. In connection with his earlier film *Twelve Monkeys*, Mr. Gilliam and his production studio were sued for infringing the copyright in a drawing owned by

artist Lebbeus Woods. Specifically, the 1995 film included an interrogation/torture chair that was obviously based on Woods' "Neomechanical Tower (Upper) Chamber" drawing from 1987:



**Left: still from *12 Monkeys*; right: Lebbeus Woods' *Neomechanical Tower***

48.     In *Woods v. Universal City Studios, Inc.* (Case No. 96-Civ-1516), Woods was granted a preliminary injunction, 920 F. Supp. 62 (S.D.N.Y. 1996), enjoining Gilliam and his partners from distributing the film, and ultimately, the parties settled. But clearly Mr. Gilliam did not learn his lesson, as the present action amply demonstrates. As was the case in *Woods*, here Mr. Gilliam and his cohorts "cannot seriously contend" that they did not draw their inspiration from Plaintiffs' Copyrighted Artwork, because the Infringing Work copies Plaintiffs' mural in "striking detail." And, again just like the *Woods* case, it does not matter here how many minutes of screen time in the Film are devoted to the Infringing Work, because what is important is "the amount taken without authorization from the infringed work," **not** "the characteristics of the infringing work."

19

## COUNT I
## COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 501

49.     Plaintiffs hereby incorporate paragraphs 1–48 of the Complaint by reference as if fully set forth herein.

50.     The U.S. Copyright Act prohibits unlawful copying of protected works, including those works protected by foreign countries adhering to the Berne Convention.

51.     Plaintiffs hold a current and subsisting copyright registration from Argentina, covering the Copyrighted Artwork.  The registration is valid and enforceable, and constitutes *prima facie* evidence of Plaintiffs' ownership of all copyrights in and to the Copyrighted Artwork.  The Copyrighted Work was created in Argentina, so U.S. registration is not required under 17 U.S.C. § 411(a).

52.     Without the consent of Plaintiffs, Defendants have appropriated the Copyrighted Artwork and used it in the Film.

53.     Defendants have thus engaged in copyright infringement, in violation of U.S. federal law and international law.  Defendants' acts of infringement are knowing and willful.

54.     Defendants' acts of infringement have caused, and unless enjoined by this Court will continue to cause, irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

55.     As a direct and proximate result of Defendants' willful violation of the Copyright Act, Plaintiffs have suffered damages in an amount to be proven at trial.

56.     Plaintiffs are entitled to recover full costs and attorneys' fees pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, for injunctive relief and damages, under the federal Copyright Act, in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

## COUNT II
## ILLINOIS UNFAIR TRADE PRACTICES
### 815 ILCS 510/1 *et seq.*

57.     Plaintiffs hereby incorporate paragraphs 1–56 of the Complaint by reference as if fully set forth herein.

58.     This Count is to remedy violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et. seq.*

59.     Defendants' misappropriation of the Copyrighted Work is likely to cause confusion or misunderstanding as to the sponsorship, approval, affiliation or connection by or of Plaintiffs to Defendants and their films and services.

60.     By virtue of the foregoing acts, Defendants have engaged in deceptive trade practices in the course of Defendants' business, in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et. seq.* Defendants' unlawful acts are knowing and willful.

61.     Defendants' wrongful activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to Plaintiffs, for which they have no adequate remedy at law.

62.     Plaintiffs are entitled to recover their reasonable attorneys' fees and costs pursuant to 815 ILCS 510/3.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, for injunctive relief and damages available under the Illinois Uniform Deceptive Trade Practices Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

4814-5568-7196.1

## COUNT III
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES
### 815 ILCS 505/1 *et seq.*

63.     Plaintiffs hereby incorporate paragraphs 1–62 of the Complaint by reference as if fully set forth herein.

64.     This Count is to remedy violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq.*

65.     Defendants' unauthorized of the Copyrighted Work has caused, and is likely to cause in the future, a public injury and a detrimental effect on consumers as to the origin of Defendants' products and services.  Said acts constitute unfair methods of competition and unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq.*  Defendants' unlawful acts are knowing and willful.

66.     Defendants' wrongful activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to Plaintiffs, for which they have no adequate remedy at law.

67.     Plaintiffs are entitled to recover their reasonable attorneys' fees and costs pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, for injunctive relief and damages available under the Illinois Consumer Fraud and Deceptive Business Practices Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

## PRAYER FOR RELIEF

As a direct and proximate result of Defendants' conduct, Plaintiffs seek the following relief:

4814-5568-7196.1

A. Preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502, enjoining and restraining Defendants from the unlawful and unfair acts and conduct set forth above, for any purpose;

B. An order for impoundment and disposition of all Infringing Articles, pursuant to 17 U.S.C. § 503;

C. An order requiring an accounting of the gains and profits realized by Defendants from their wrongful acts of copyright infringement, unfair and deceptive trade practices, and consumer fraud and deceptive business practices;

D. For an order requiring Defendants to pay to Plaintiffs:

    i. statutory damages;
    ii. actual damages;
    iii. all profits wrongfully derived by Defendants from their acts of infringement;
    iv. increased and punitive damages as allowed by law;
    v. costs and expenses, including without limitation reasonable attorneys' fees; and
    vi. prejudgment interest at the maximum legal rate;

E. For an award of full costs and attorneys' fees, pursuant to 17 U.S.C. § 505; and

F. Any additional relief that this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand and request a trial by jury on all issues so triable.

Dated: August 12, 2014

Respectfully submitted,

By:    /s/ Jami A. Gekas & Diego R. Figueroa Rodriguez
Attorney for Plaintiffs

Jami A. Gekas (IL# 6275196)
Diego R. Figueroa Rodriguez (*Of Counsel*, NY #3999091 and FL #0103024)
Diego Fernandez (*Of Counsel*, Licensed to Practice in Argentina)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Phone: 312.832.4500
Fax: 312.832.4700

*Attorneys for Plaintiffs*

4814-5568-7196.1