**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| FRANCO FASOLI (A/K/A "JAZ"), NICOLAS SANTIAGO ROMERO ESCALADA (A/K/A "EVER") AND DEREK SHAMUS MEHAFFEY (A/K/A "OTHER"), | ) ) ) ) ) | Case No. 1:14-cv-06206-RWG |
| Plaintiffs, | ) ) ) | JURY TRIAL DEMANDED |
| v. | ) ) | |
| VOLTAGE PICTURES, THE ZANUCK CO. D/B/A ZANUCK INDEPENDENT, MEDIAPRO PICTURES, WELL GO USA INC., AMPLIFY RELEASING, DAVID WARREN, TERENCE VANCE GILLIAM, AND JOHN DOES 1-10. | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**


**FOLEY & LARDNER LLP**
Jami A. Gekas
Kenneth Suh
Diego Fernandez (*Of Counsel*)
321 N. Clark, Suite 2800
Chicago, IL 60654
Phone: (312) 832-4500
Fax: (312) 832-4700

Diego R. Figueroa Rodriguez (*Of Counsel*)
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Phone: (305) 482-8400
Fax: (305) 482-8600

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

LEGAL STANDARDS ........................................................................................................2

ARGUMENT ........................................................................................................................2

     I.     Plaintiffs will Succeed on the Merits of Their Copyright Claims ..........................3

          A.     The Artwork is Protected by a Valid Copyright ..........................................4

          B.     Defendants Copied Constituent Elements of Plaintiffs'
               Copyrighted Artwork ..................................................................................4

     II.     Plaintiffs have No Adequate Remedy at Law and Will Suffer Irreparable
          Injury if the Preliminary Injunction is not Granted ...............................................9

     III.     The Balance of the Harms Supports Granting a Preliminary Injunction ..............13

          A.     The Balance of Harms Between the Parties ...............................................14

          B.     The Balance of Harms with the Public ....................................................14

CONCLUSION ...................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aimster*,
 334 F. 3d at 655 ...................................................................................................... 14

*Apple Inc. v. Psystar Corp.*,
 673 F. Supp. 2d 943 (N.D. Cal.2009) .............................................................. 9, 10

*Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*,
 134 F.3d 821 (7th Cir. 1998) ............................................................................ 3, 6

*Bulgari, SPA v. Partnerships and Unincorporated Associations*
 2014 U.S. Dist. LEXIS 107218 (N.D. Ill. July 18, 2014) ..................................... 13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991) .............................................................................................. 4

*Frerck v. John Wiley & Sons, Inc.*,
 850 F. Supp. 2d 889 (N.D. Ill. 2012) ..................................................................... 9

*Graphic Design Mktg. v. Xtreme Enters., Inc.*,
 772 F. Supp. 2d (E.D. Wis. 2011) ....................................................................... 15

*Incredible Techs., Inc. v. Virtual Techs., Inc.*,
 400 F.3d 1007 (7th Cir. 2005) ............................................................................... 5

*JCW Invs., Inc. v. Novelty, Inc.*,
 222 F. Supp. 2d 1030 (N.D. Ill. 2002)(J. Gettleman) ............................ 2, 4, 5, 7, 13

*JCW Invs., Inc. v. Novelty, Inc.*,
 482 F.3d 910 (7th Cir. 2007) ................................................................................. 4

*Michigan v. U.S. Army Corps of Engineers*,
 667 F.3d 765 (7th Cir. 2011) ................................................................................. 3

*Microsoft Corp. v. Marturano*,
 2009 U.S. Dist. LEXIS 44450 (E.D. Cal. May 27, 2009) ..................................... 12

*Peters v. West*,
 692 F. 3d. 629 (7th Cir. 2012) ............................................................................ 6, 9

*Sadhu Singh Hamdad Trust v. Ajit Newspaper Adver., Mktg. and Commc'ns, Inc.*,
 503 F. Supp. 2d 577 (S.D.N.Y. 2007) .................................................................... 4

*Skyline Design, Inc. v. McGrory Glass, Inc.*,
2014 U.S. Dist. LEXIS 8439 (N.D. Ill. Jan. 23, 2014)...........................................................5

*Tory Burch LLC et al. v. The P'ships and Unincorporated Ass'ns. Identified on
Schedule "A," et al*,
2013 U.S. Dist. LEXIS 43173 (N.D. Ill. Mar. 27, 2013) .....................................................14

*Woodard v. Victory Records, Inc.*,
2013 U.S. Dist. LEXIS 144270 (N.D. Ill. Oct. 4, 2013) .......................................................9

*Woods v. Universal City Studios, Inc.*,
920 F. Supp. 62 (S.D.N.Y. 1996) .......................................................................1, 7, 9, 13, 14

*Yash Raj Films, Inc. v. Sidhu*,
No. CV F 09-0233 AWI GSA, 2010 U.S. Dist. LEXIS 25988
(E.D. Cal. Mar. 18, 2010)...................................................................................................11

*Zimnicki v. Gen. Foam Plastics Corp.*,
No. 09-C2132, 2011 WL 5866267 (N.D. Ill. Nov. 22, 2011) .................................................4

**Statutes**

17 U.S.C. §§ 101, 104, 411 ........................................................................................................4

17 U.S.C. § 502(a)......................................................................................................................2

## INTRODUCTION

The Court should grant Plaintiffs' Motion for Preliminary Injunction ("Motion") because they meet the Seventh Circuit's test for receiving preliminary injunctive relief. Plaintiffs are likely to succeed on the merits of their case, have and will continue to suffer irreparable harm, and the balance of harms favor granting a preliminary injunction. After the filing Complaint, Plaintiffs sought to avoid having to file this Motion, by attempting to negotiate a complete resolution to this dispute with Defendants. Unfortunately, however, despite multiple conversations with defense counsel, Plaintiffs' settlement negotiations were unsuccessful leaving Plaintiffs no choice but to file this Motion.

This is not the first time one of the Defendants has run afoul of copyright laws. *See Woods v. Universal City Studios, Inc.*, 920 F. Supp. 62 (S.D.N.Y. 1996). In *Woods*, the Court granted a preliminary injunction, enjoining Universal City Studios from "distributing, exhibiting, performing or copying" any portion of the motion picture *12 Monkeys* showing an interrogation/torture chair copied from an artists' copyrighted artwork. *Id.* Likewise, in this case, an analysis of the expressive elements of the two works reveals that Defendants—led by film director Gilliam—once again copied an artist's copyrighted artwork. Here, as in the *Woods* case, Defendants "cannot seriously contend that [the Copyrighted Artwork] was not copied during the filming of [the movie][.]" *Woods*, 920 F. Supp. at 64.

Defendants Gilliam, Warren, and MediaPro were responsible for the creation of the infringing film, while the remaining U.S. Defendants are, at a minimum, responsible for the continued promotion, distribution, and sale of the Film in the United States. (Complaint (Dkt. 3) at ¶¶ 35-36 (Voltage), 37 (Zanuck), 39-40 (Amplify), and 41 (Well Go)). Without an order from the Court, Defendants will continue to make money in the United States through their

1

infringement of Plaintiffs' copyrighted artwork.  As such, Plaintiffs are likely to succeed on the merits of their claims, and will most certainly face irreparable harm if their Motion is denied.

## LEGAL STANDARDS

The Copyright Act provides that courts may grant injunctive relief  "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "To obtain a preliminary injunction based on a claim of copyright infringement, the movant must demonstrate: (1) some likelihood of success on the merits; (2) absence of an adequate remedy at law; and (3) that it will suffer irreparable harm absent injunctive relief."  *JCW Invs., Inc. v. Novelty, Inc.*, 222 F. Supp. 2d 1030, 1033 (N.D. Ill. 2002)(J. Gettleman)(further citations omitted).  "[T]he district court then balances the irreparable harm to the movant against the harm that would be suffered by the non-movant, as well as non-parties, if preliminary injunctive relief were granted." (*Id.*)  "In balancing the harms to parties and the public, the court uses a "sliding scale" approach—"the more likely it is the movant will succeed on the merits, the less the balance of irreparable harms need weigh toward its side." (*Id.*)

## ARGUMENT

Here, Plaintiffs not only meet the Seventh Circuit's test for preliminary injunctive relief, they exceed it.  Plaintiffs' artwork (the "**Copyrighted Artwork**") is a famous, large-scale painted mural created in 2010 and on permanent public display on Fitz Roy Street in Buenos Aires, Argentina.  (Compl. at ¶¶ 1-3 and 15-19; Declaration of Kenneth K. Suh ("Suh Decl."), Exh. A).  The Copyrighted Artwork is protected by a copyright registration issued pursuant to the laws of Argentina. (Compl. at ¶¶ 1-3 and 15-19).  Defendants have blatantly and intentionally infringed Plaintiffs' Copyrighted Artwork by copying the work and using it in connection with

2

the promotion, distribution, and sale of Defendants' motion picture film, *The Zero Theorem* (the "**Film**"*).*

Much of the Film takes place at a burnt-out chapel, which serves as the home for the main character. Accordingly, the exterior of the chapel, along with an adjacent sex shop, is shown onscreen throughout the Film. A still of the film that prominently shows the chapel and adjacent sex shop is used repeatedly by the filmmakers in promotional materials. The exterior wall of the chapel (shared by the sex shop) features a colorful mural (the "**Infringing Work**") that is a blatant misappropriation of Plaintiffs' Copyrighted Artwork.

The Infringing Work's prominence and importance to the story throughout the Film is evident by Defendants' continued use of the Infringing Work in the Film's marketing and promotion. The Film's Official Trailer, available for viewing in the U.S. on Youtube.com, Imdb.com, and the Film's official websites, prominently features the Infringing Work. (Suh Decl., Exhs. F, G, H, and I). Likewise, defendants feature the Infringing Work while promoting the Film on Facebook, Pinterest, Twitter, Youtube, and Google+. (Suh Decl., Exhs. B-E).

In short, the Infringing Work plays a key part in the world brought to life by the filmmakers onscreen and is being used extensively to market the Film to U.S. moviegoers. Thus the scope of Defendants' unlawful use of the Infringing Work and derivatives thereof is vast, and, without the Court's intervention, Defendants will continue to misappropriate the Plaintiffs' Copyrighted Artwork.

## I.      Plaintiffs will Succeed on the Merits of Their Copyright Claims

Plaintiffs can demonstrate at least some probability of succeeding in their copyright infringement claims. As the Seventh Circuit has noted, "the threshold for establishing likelihood of success is low," *Michigan v. U.S. Army Corps of Engineers,* 667 F.3d 765, 782 (7th Cir.

3

2011), and requires merely a "better than negligible chance of succeeding on the merits." *Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998).

Plaintiffs can demonstrate a better than negligible chance of succeeding on the merits because they can prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007).

### A.    The Artwork is Protected by a Valid Copyright

Plaintiffs' Copyrighted Artwork is protected by a valid copyright.  The Copyrighted Artwork is protected by Argentinian Copyright Reg. No. 5136763, effective November 15, 2013, titled *Castillo* ("Castle" in English).  (Compl. at Exh. D).  Plaintiffs' Argentinian Copyright registration is enforceable in the United States because both countries are signatories to the Berne Convention.  *See* 17 U.S.C. §§ 101, 104, 411*; see also Sadhu Singh Hamdad Trust v. Ajit Newspaper Adver., Mktg. and Commc'ns, Inc.*, 503 F. Supp. 2d 577, 584 (S.D.N.Y. 2007).  A copy of Plaintiffs' certificate of registration is sufficient for the "the court [to] accept[] plaintiff's contention [the Plaintiffs' work] is protected by a valid copyright. *JCW Invs.,* 222 F. Supp.2d at 1034.

### B.    Defendants Copied Constituent Elements of Plaintiffs' Copyrighted Artwork

Plaintiffs can also demonstrate that defendants copied their work—the second element of the likelihood of success test.  "Copying" is a two-part test: "First, there is the factual question whether the defendant, in creating its work, used the plaintiff's material as a model, template, or even inspiration.  The second, legal question is whether the defendant's work is substantially similar to plaintiff's work such that liability may attach." *Zimnicki v. Gen. Foam Plastics Corp.*, No. 09-C2132, 2011 WL 5866267, at *2 (N.D. Ill. Nov. 22, 2011) (internal quotations omitted);

see also *Feist,* 499 U.S. at 361.  Moreover, "[b]ecause direct evidence of copying is rare, copying may be inferred where, (1) the defendant had access to the copyrighted work, and (2) the accused work is substantially similar to the copyrighted work."  *JCW Invs.,* 222 F. Supp.2d at 1034; *see also Skyline Design, Inc. v. McGrory Glass, Inc.*, 2014 U.S. Dist. LEXIS 8439 (N.D. Ill. Jan. 23, 2014) (*quoting Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607 (7th Cir. 1985).

### 1.    Defendants had Access to the Copyrighted Artwork

There is ample evidence that Defendant had access to Plaintiffs' Copyrighted Artwork. The "[b]road public display" of Plaintiffs' Copyrighted Artwork "may give rise to an inference of access."  *JCW Invs.,* 222 F. Supp.2d at 1034 (*citing Ty, Inc. v. GMA Accessories, Inc.*, 936, 940 (N.D. 144 1997)).  Plaintiffs need not show that Defendants actually viewed the protected work, "but [only provide] proof of the opportunity to view the copyrighted work."  *Id.*  Here, there is no question that the Defendants had access to the Copyrighted Artwork.  In addition to the public nature of the Copyrighted Artwork, the Copyrighted Artwork received significant media coverage and achieved international recognition and notoriety.  (Compl. at Exh. E).

### 2.    The Infringing Work is Substantially Similar to the Copyrighted Artwork

It is undeniable that the Infringing Work is substantially similar to the Copyrighted Artwork.  Substantial similarity is determined by examining "whether the accused work is so similar to the plaintiff's work that an *ordinary reasonable perso*n would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value."  5 *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) (*emphasis* added) (*quoting Atari, Inc.,* 672 F.2d at 614).  Therefore, "[t]his test does not involve 'analytic dissection and expert testimony,' but instead turns on whether the accused

work has captured the 'total concept and feel' of the copyrighted work." *JCW Invs.,* 222 F. Supp.2d at 1034 (*quoting Atari*, 672 F.2d at 614). As the Seven Circuit recently explained, the Plaintiffs need only show that "the two works share enough unique features to give raise to a breach of the duty not to copy another's work." *Peters v. West,* 692 F. 3d. 629, 633-34 (7th Cir. 2012).

At minimum, Plaintiffs have a "'better than negligible chance" of showing that an ordinary reasonable person would conclude that the Infringing Work is substantially similar to the Copyrighted Artwork. *Boucher*, 134 F.3d at 824. The Copyrighted Artwork, reproduced below, has three main expressive elements, all of which are protected by Plaintiffs' copyright registration:



(Suh Decl., Exh. A).

Defendants' Infringing Work, reproduced below, copies each of these elements:



(Suh Decl., Exh. H).

As is readily apparent, the Infringing Work merely re-arranges the three main expressive elements of the Copyrighted Artwork, and uses a wash-out red background, rather than the brilliant blue background of the Copyrighted Artwork.

A side by side comparison of each of the three main expressive elements, as they appear in the Copyrighted Artwork (left) and the Infringing Work (right), would lead the ordinary reasonable observer to conclude that the Infringing Work incorporates the "total concept and feel" of the Copyrighted Artwork, and is thus substantially similar to the Copyrighted Artwork. *JCW Invs.*, 222 F. Supp.2d at 1034; *see also Woods,* 920 F. Supp. at 64-65 (comparing the expressive elements of the copyrighted artwork to the corresponding elements of the infringing movie footage).

7

| The Copyrighted Artwork | The Infringing Work |
|---|---|



(Suh Decl., Exhs. A and H).

Because "the two works share enough unique features to give raise to a breach of the duty not to copy another's work," *Peters*, 692 F. 3d. at 633-34, Plaintiffs meet, if not exceed, the "some likelihood of success" prong of the Seventh Circuit's test for preliminary injunctive relief. Indeed, much like a prior case finding that one of Defendants in this case "copied [an artist's protected drawing] in striking detail [in designing a movie set design][,]" Defendants "cannot seriously contend that [the Copyrighted Artwork] was not copied during the filming of [the movie][.]" *Woods*, 920 F. Supp. at 64.

## II. Plaintiffs have No Adequate Remedy at Law and Will Suffer Irreparable Injury if the Preliminary Injunction is not Granted

Absent an injunction, Plaintiffs will no doubt suffer irreparable injury. In this Circuit, threat of irreparable injury necessary to justify the preliminary injunctive relief must be "real and immediate, not conjectural or hypothetical." *Woodard v. Victory Records, Inc.*, 2013 U.S. Dist. LEXIS 144270 *9 (N.D. Ill. Oct. 4, 2013) (internal citations omitted). In addition, a plaintiff must demonstrate that traditional legal remedies, such as monetary damages, would be inadequate to remedy the harm it would suffer absent an injunction. *Id.* The inquiries into the existence of irreparable harm and the availability of an adequate remedy at law often raise similar issues and are frequently conducted in combination with one another. *Id. at *10* (citing *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)).

In copyright cases, harm to a plaintiff's reputation is sufficient to establish irreparable harm that cannot adequately be remedied at law. *See Frerck v. John Wiley & Sons, Inc.*, 850 F. Supp. 2d 889 (N.D. Ill. 2012) (contrasting between the loss of money that can be adequately remedied via damages, and "intangible harm such as a loss of goodwill or damage to [a plaintiff's] reputation – that cannot be fully redressed by monetary damages."). For example, in

9

*Apple Inc. v. Psystar Corp.,* 673 F. Supp. 2d 943 (N.D. Cal.2009), the court entered an injunction following a finding that the defendant infringed on Apple's copyright by reproducing, modifying, and distributing Apple's Operating System (OS) for use on non-Apple computers. The court emphasized that Apple would suffer irreparable harm and that legal remedies were inadequate because the decreased functionality and quality of the defendant's installation of Apple's OS would damage Apple's reputation and goodwill and such harms would be "difficult, if not impossible, to quantify." *Id.* at 948-950.

In the instant case, Defendants' actions are causing irreparable harm to Plaintiffs' goodwill and reputation, and, unless enjoined, will continue to cause irreparable harm. Specifically, Plaintiffs' reputation will undoubtedly be damaged by the use of their Copyrighted Artwork in an unauthorized manner, without consent in the Film. (Declaration of Derek Shamus Mehaffey ("Mehaffey Decl.") at ¶¶ 2-5 and 8-9; Declaration of Nicolas Santiago Romero Escalada ("Escalada Decl.") at ¶¶ 3-11). As well-known artists with international followings, each of the Plaintiffs have the luxury of picking and choosing which commissioned works to accept, and which to turn-down. (Mehaffey Decl., ¶¶ 2,3, and 5; Escalada Decl., ¶¶ 5-8). Their reputations rest on the nature of the projects they choose to undertake. (Mehaffey Decl., ¶¶ 5 and 8; Escalada Decl., ¶¶ 8-12). Indeed, as urban artists, the backdrops they select for their work is even more important than for an artist whose work is placed on a conventional framed canvas that can be hung anywhere. (*Id.*). The very sites Plaintiffs choose to paint may sometimes be as important or meaningful as the artwork that appears on them. (*Id.*). Defendants' unauthorized use of the Copyrighted Artwork strips Plaintiffs of their ability to control the placement of their artwork, denies them their choice as artists, and unilaterally fixes their Copyrighted Artwork in the fictional world created by Defendants. (Escalada Decl., ¶ 11). The Infringing Work is

10

plastered on the exterior wall of the main character's home and workplace, a burnt-out chapel set in a dystopian future world. (Compl. at ¶ 27). The chapel, located adjacent to a sex shop, has been described by a movie reviewer as a "decaying steampunk cathedral." (Compl. at ¶ 29). This is a far cry from the Plaintiffs' chosen site for the Copyrighted Artwork – the well-known *zona de graffiti* ("street art zone") on FitzRoy Street in Buenos Aires, Argentina, a destination spot for international artists and art lovers. (Compl. at ¶¶ 21-24). By usurping Plaintiffs' moral rights as artists to choose how and where their artwork is displayed, Defendants have caused a type of harm that is difficult to quantify and cannot be remedied solely by the payment of money damages.

Additionally, in copyright cases, irreparable harm can be found where the quality of the infringing material is less than the quality of the legitimate product. *Yash Raj Films, Inc. v. Sidhu*, No. CV F 09-0233 AWI GSA, 2010 U.S. Dist. LEXIS 25988, at *19 (E.D. Cal. Mar. 18, 2010). This is particularly significant in the case of copies of artwork, as the inferior quality can affect an artist's brand and reputation as an artist. Here, Defendants' copy is amateurish and does not meet the Plaintiffs' artistic standards. In addition, mural changes the brilliant blue background of the Copyrighted Artwork to a washed out red thereby lessening the impact of the Plaintiffs' artistic design. Moreover, Defendants' Infringing Work exists in a fictional dystopian world that is littered with sex shop signs and posters, which further dilutes quality and impact of the Copyrighted Artwork. See below:

4841-5553-7950.5



(Suh Decl., Exh. H).

For this reason as well, Plaintiffs are suffering and will continue to suffer irreparable injury absent an injunction.

Indeed, given the substantial similarity between the two works and notoriety of Plaintiffs' artwork, there is a significant likelihood of confusion about whether Plaintiffs authorized the use of the Copyrighted Artwork in the Film. This confusion and mistake alone is enough to establish irreparable harm that cannot be remedied without an injunction. *See e.g. Microsoft Corp. v. Marturano*, 2009 U.S. Dist. LEXIS 44450, at *8-9 (E.D. Cal. May 27, 2009) (issuing permanent injunction to enjoin the illegal distribution of counterfeit software finding that defendant's actions caused irreparable injury in the form of "confusion, mistake or deception as to the product's source, origin or authenticity.").

Finally, as described in Section I above, Defendants undeniably copied Plaintiffs' Copyrighted Artwork. That is bad enough, but, worse yet, they are claiming it as their own. In fact, Defendant Warren, a seasoned art and set designer, has emphasized that the Infringing Work was a key component of the fictional world created by the filmmakers, and further described the Infringing Work as their "graffiti." (Compl. at ¶¶ 42-44). He said the following in an interview in describing the chapel that serves as the home of Qohen, the main character:

12

And now I've come here to Cobălcescu, which is where Qohen's chapel exterior is. As you can see behind me, we are still scuttling around putting things into place and painting it and dressing it, things like that. **This is our world.** Some of it you can see, some of it we put in ourselves. Look, there's smoke there already. The apartment block was here already, I have to admit. The little chapel, we put that in. **The graffiti is ours**, which has changed the character of the alleyway to our world, as we like to phrase it… "Terry's vision", which is very colourful in this film.

(*Id.*).

Allowing Defendants to continue using the ill-begotten "graffiti" with impunity during the duration of this litigation, in blatant disregard for the Plaintiffs' valuable rights in the Copyrighted Artwork, merely because there may be a monetary remedy would be tantamount to forcing Plaintiffs to license their Copyrighted Artwork to Defendants for some unknown price yet to be determined in the future. As the court who previously enjoined Defendant Terry Gilliam in another prior copyright infringement action properly noted, "[t]he Copyright Law does not condone a practice of 'infringe now, pay later.'" *Woods*, 920 F. Supp. at 65. This Court should not condone this practice either, and for this reason as well, the preliminary injunction should be entered.

### III. The Balance of the Harms Supports Granting a Preliminary Injunction

Lastly, the balance of the harms supports granting a preliminary injunction. As this Court has previously observed, "the district court [next] balances the irreparable harm to the movant against the harm that would be suffered by the non-movant, as well as non-parties, if preliminary injunctive relief were granted." *JCW Invs., Inc.*, 222 F. Supp. 2d at 103. "In balancing the harms to parties and the public, the court uses a 'sliding scale' approach, so that 'the more likely it is the movant will succeed on the merits, the less the balance of irreparable harms need weigh toward its side.'" *Id.; see also Bulgari, SPA v. Partnerships and Unincorporated Associations,* 2014 U.S. Dist. LEXIS 107218 at *9 (N.D. Ill. July 18, 2014).

13

### A.   The Balance of Harms Between the Parties

First, as between the parties, "Plaintiffs have demonstrated a strong likelihood of prevailing on the merits [and thus] leaves Defendants with a proportionately small chance" of avoiding a preliminary injunction. *Tory Burch LLC et al. v. The P'ships and Unincorporated Ass'ns. Identified on Schedule "A," et al,* 2013 U.S. Dist. LEXIS 43173 at 22 (N.D. Ill. Mar. 27, 2013). As described above, Plaintiffs, as artists whose professional identity is intimately paired with their reputations, will suffer great harm if Defendants continue displaying the Infringing Work. Moreover, the balancing of the harms favors granting a preliminary injunction when damages from copyright infringement "cannot be readily estimated," as is the case here. *In re Aimster*, 334 F. 3d at 655.

The only possible hardship for Defendants is financial. However, as the *Woods* Court noted to movie distributor University City Studios:

> Copyright infringement can be expensive. The Copyright Law does not condone a practice of "infringe now, pay later." Copyright notification and registration put potential infringers on notice that they must seek permission to copy a copyrighted work or risk the consequences.

*Woods,* 920 F.Supp. at 65; *see also In re Aimster,* 334 F. 3d 643, 656 (7th Cir. 2003)(giving little weight to the fact that the accused copyright infringer was "put out of business" by a preliminary injunction).

### B.   The Balance of Harms with the Public

Secondly, the balancing of harms between the Plaintiffs and the public also favors granting a preliminary injunction. "The public is generally interested in upholding intellectual property rights, encouraging innovation and creativity, and rewarding those that take the risk and invest resources in pursuit of such innovation and creativity." *QSRSoft, Inc. v. Rest. Tech.,* Inc.

No. 06 C 2734 (N.D. Ill. 2006).   As a District Court in this Circuit explained, there is "no countervailing public interest at risk that would outweigh [a plaintiff's] interest in preventing [a defendant] from selling goods [using] its …copyrighted [subject matter]."   *Graphic Design Mktg. v. Xtreme Enters., Inc.*, 772 F. Supp. 2d, 1029, 1035 (E.D. Wis. 2011).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion and enter a preliminary injunction enjoining Defendants, as well as their officers, agents, assigns and anyone acting in concert with them, from further distribution of the Infringing Work, pending trial on the merits.  Plaintiffs are submitting a proposed order separately.

Respectfully submitted,


By: /s/ Kenneth K. Suh_____

Dated: September 22, 2014

Jami A. Gekas (IL# 6275196)
Kenneth K. Suh (TX # 24070701)
Diego R. Figueroa Rodriguez (*Of Counsel*)
Diego Fernandez (*Of Counsel*, Licensed to Practice in Argentina)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Phone: 312.832.4500
Fax: 312.832.4700
Attorneys for Plaintiffs

15