IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCO FASOLI (a/k/a "JAZ"), NICOLAS SANTIAGO ROMERO ESCALADA (a/k/a "EVER") AND DEREK SHAMUS MEHAFFEY (a/k/a "OTHER"),<br><br>Plaintiffs,<br><br>v.<br><br>VOLTAGE PICTURES, LLC, THE ZANUCK CO. D/B/A ZANUCK INDEPENDENT, MEDIAPRO PICTURES, WELL GO USA INC., AMPLIFY RELEASING, DAVID WARREN, TERENCE VANCE GILLIAM, AND JOHN DOES 1-10,<br><br>Defendants. | No.  14 C 6206<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Franco Fasoli ("Jaz"), Nicolas Santiago Romero Escalada ("Ever"), and Derek Shamus Mehaffey ("Other"), filed a three-count complaint against defendants Voltage Pictures, LLC ("Voltage"), The Zanuck Co. ("Zanuck"), MediaPro Pictures ("MediaPro"), Well Go USA, Inc. ("Well Go"), Amplify Releasing ("Amplify"), David Warren, Terrence Gilliam, and ten unnamed defendants, alleging: (1) copyright infringement in violation of 17 U.S.C. § 501 (Count I); (2) unfair trade practices in violation of 815 ILCS 510/1 *et seq.* (Count II); and (3) consumer fraud and deceptive business practices in violation of 815 ILCS 505/1 *et seq.* (Count III).  On September 22, 2014, plaintiffs filed a motion for preliminary injunction, which has been fully briefed.  Defendants Voltage and Amplify have filed the instant motion to transfer venue from this court to the United States District Court for the Central District of California pursuant to 28

U.S.C. § 1404(a). Defendants Zanuck and Well Go have joined defendants' motion. For the reasons stated below, the motion is granted.

## BACKGROUND[1]

Plaintiffs are international visual artists who, in December 2010, painted a mural in latex and spray-paint on Fitz Roy Street in Buenos Aires, Argentina. The mural is located in a well-known area referred to as zona de graffiti ("street art zone"), and is signed only with plaintiffs' pseudonymous, "OTHERJAZEVER." Plaintiffs Jaz and Ever, both citizens of Argentina, later registered the mural with the Argentinian Copyright Office under the title *Castillo*. Plaintiff Other, a Canadian citizen, is not referenced on the copyright. The copyright became effective on November 15, 2013.

According to defendants, California based production companies, Voltage and Zanuck, began producing the film "The Zero Theorem" in 2012. Defendant Terry Gilliam directed the film and defendant David Warren served as the movie's production designer. The movie was filmed in Romania with help from MediaPro, a Romanian production company. "The Zero Theorem" was first exhibited at film festivals in Italy and Texas in the Fall of 2013 and was later released, on a limited scale, in the United States in 2014. Defendants assert that the film has principally been distributed throughout the United States via digital streaming services. Amplify, a film distributor with its principal place of business in Los Angeles, California, has been responsible for distribution and promotion in the United States. According to plaintiffs,

---

[1] In considering a motion to transfer for improper venue, the court accepts all well-pleaded allegations in the complaint as true unless controverted by defendants' affidavits. QSN Indus., Inc. v. Sanderson, No. 95-C-3356, 1995 WL 743751, at *1 (N.D. Ill. Dec. 13, 1995).

defendant Well Go, a Texas based company, has collaborated with Amplify to distribute the movie on DVD and Blu-Ray throughout the United States.

"The Zero Theorem" is a science fiction film about a computer programer, Qohen Leth, working on a formula that may reveal the meaning of life. Plaintiffs allege that much of the movie takes place in the main character's home, a chapel that has been partially converted into residential space. Plaintiffs complain that in violation of their copyright, the outside of the chapel, which is shown throughout the movie, is painted with a recreation of plaintiffs' mural, *Castillo*. Plaintiffs allege that screen-shots of the chapel's exterior, which includes plaintiffs' artwork, are "used repeatedly by the filmmakers in promotional materials," including on the film's official websites and on various social media sites maintained by defendants.

## DISCUSSION

### A. Legal Standard

28 U.S.C. § 1404(a) provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The court may transfer a case to another jurisdiction when: (1) venue is proper in both the transferor and the transferee courts; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. Moore v. Motor Coach Indus., Inc., 487 F. Supp. 2d 1003, 1006 (N.D. Ill. 2007). The moving party has the burden of showing that the circumstances favor a transfer. Id. A transfer must promote the efficient administration of justice, rather than simply shift the inconvenience from one party to the other. See Black v. Mitsubishi Motors Credit of America, Inc., No. 94-C-3055, 1994 WL

424112, at *1 (N.D. Ill. Aug. 10, 1994). District courts have broad discretion in deciding whether transfer is warranted. Cote v. Wadel, 796 F.2d 981, 985 (7th Cir. 1986).

**B.     Analysis**

In opposition to defendants' motion to transfer, plaintiffs first contend that defendant Voltage cannot claim that the Northern District of Illinois is inconvenient because it has filed numerous actions here through a subsidiary. In support of this argument, plaintiffs attach to their response, as Exhibit A, a list of cases with variations of the case caption Dallas Buyers Club, LLC v. Does. Plaintiffs' contention fails because there is nothing to indicate that these cases arise from actions taken outside this district and/or involve defendants that do not reside here.

Plaintiffs next argue that defendants' motion is premature because not all defendants have filed answers or appeared in this case. However, as defendants point out, plaintiffs similarly filed their motion for preliminary injunction before the instant motion to transfer was filed and before all of the parties had been properly served. Additionally, two other defendants, Zanuck and Well Go, have subsequently joined in the instant motion to transfer, and all defendants, with the exception of MediaPro, have been served or have waived service at this time. Consequently, defendants' motion is not untimely.

In their response brief, plaintiffs do not contest that venue is proper in the Central District of California or that transfer is in the interest of justice. As such, the court has discretion to transfer the case if doing so is for the convenience of the parties and witnesses and in the interest of justice.[2] "In determining whether a forum is more convenient, the court must consider the

---

[2] The court notes that because defendants have moved for a transfer of venue before moving to dismiss for lack of personal jurisdiction or asserting lack of personal jurisdiction as an
(continued...)

private interests of the parties as well as the public interest of the court."³ Aldridge v. Forest River, Inc., 436 F. Supp. 2d 959, 960 (N.D. Ill. 2006). The factors related to the parties' private interests include: "'(1) the plaintiffs' choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses.'" Spread Spectrum Screening, LLC v. Eastman Kodak Co., No. 10-C-1101, 2010 WL 3516106, at *3 (N.D. Ill. Sept. 1, 2010), quoting Amoco Oil Co. v. Mobile Oil Corp., 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

Plaintiffs argue that defendants have failed to establish that the Central District of California is more convenient than this venue. In support of this position, plaintiffs quote Fink v. Declassis, 738 F. Supp. 1195, 1198 (N.D. Ill. 1990), for the proposition that defendants must "demonstrate that the balance of the factors weighs heavily in favor of transfer." However, the Fink court never made this holding. Instead, the court merely stated that "[b]efore a case will be transferred, there must be a clear balance of inconvenience." Id.

Generally, the plaintiff's choice of forum is given great weight. Spread Spectrum Screening, 2010 WL 3516106, at *3. However, as is the case here, where the plaintiff's forum is

---

²(...continued)
affirmative defense, the moving defendants have waived any objection to personal jurisdiction. Berol Corp. v. BIC Corp., No. 02-C-0559, 2002 WL 1466829, at *1 (N.D. Ill. July 8, 2002). Consequently, defendants' motion concedes jurisdiction to this court, thereby satisfying the requirement under section 1404(a) that "both the transferor and transferee courts must have jurisdiction over a defendant in order to effect a change of venue under § 1404(a)." Id.

³ Convenience of the parties should not be confused with the requirement articulated in 28 U.S.C. § 1404(a), which provides a transfer of venue must be in the interest of justice. See Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986) ("The 'interest of justice' is a separate component of a § 1404(a) transfer analysis," inquiring into the "efficient administration of the court system.")

not its home forum and the chosen forum lacks significant contacts with the cause of action, the plaintiff's choice becomes merely one of several factors and is entitled to little weight. Id. Plaintiffs Jaz and Ever are citizens and residents of Argentina and plaintiff Other is a Canadian citizen residing in San Francisco, California. Not only is this district not home to any of the plaintiffs, it does not have any, let alone significant, contacts with the cause of action. The movie was filmed and produced in Romania, the set and infringing imagery was created in Romania, and any subsequent work in the United States occurred in Los Angeles. As defendants point out, the only connection plaintiffs have to Illinois or this district is that some of their attorneys are located here. However, this consideration is entitled to little weight, SwingAway Sports Prod., Inc. v. Escalade, Inc., No. 11-C-7949, 2012 WL 1431277, at *3 (N.D. Ill. Apr. 23, 2012), especially when plaintiffs' chosen law firm has five offices in California, including one in Los Angeles.

Plaintiffs rely on FTI Consulting, Inc. v. Merit Mgmt. Grp., LP, No. 11-C-7670, 2014 WL 3858365, at *2 (N.D. Ill. Aug. 5, 2014), to argue that where "neither the Northern District of Illinois nor the proposed transferee forum has a strong connection to the material events in [the] case, which occurred in [a third venue][,] [t]he witness and parties are located across the country, . . . the fact that the plaintiff chose the Northern District of Illinois as its forum is significant." However, FTI Consulting is inapposite here because the Central District of California does have a strong connection to the events of this case. Although plaintiffs argue in their response brief that "the operative material events in this case occurred mostly in Romania, not in the Central District of California," plaintiff has alleged in other pleadings that the production of the film in Romania was just "the first instance of infringement," and that there are currently "many

6

ongoing infringing activities currently occurring here in the United States." Many of these allegedly infringing activities occurred in Los Angeles, where work on the film continued following production in Romania, including marketing, sales, financing, production of the film's trailer, and the management of defendants' promotional internet sites. Because plaintiffs are foreigners to Illinois and this district has absolutely no contacts with the cause of action, the fact that plaintiffs' chose the Northern District of Illinois has little significance. Similarly, because Illinois has no connection to the situs of material events, the second factor of the court's private interest analysis also weighs in favor of transfer.

Contrary to *FTI Consulting*, the remaining private interest factors in this case do not favor plaintiffs' position. The third and fourth factors, ease of accessing proofs and the convenience of the parties, also encourage transfer because more documentary evidence and parties are located in the Central District of California than in the Northern District of Illinois. Not a single party or piece of evidence is located in Illinois. Voltage and Zanuck are located in Los Angeles, Amplify has offices in Los Angeles, and Gilliam and Warren, although citizens of Great Britain, have residences in the Central District of California. Additionally, plaintiff Ever lives much closer to the Central District of California than the Northern District of Illinois.

The Central District of California is also home to at least some documentary evidence, as compared to Illinois, where none is located. Although some evidence may exist in Romania as the site of the initial alleged infringement, plaintiffs have alleged ongoing infringing activities that have much stronger ties to the Central District of California than to Illinois. Plaintiffs even acknowledge that in order to account for the additional burden of litigating the case here "the Court can order certain pretrial discovery in the Central District of California," and that

plaintiffs' counsels' Los Angeles office "can host depositions and receive documentation production." Given plaintiffs' willingness to conduct part of the case in California, transfer to the Central District of California is even more logical.

Because neither party has identified any non-party witnesses, the fifth private interest factor is neutral. However, the court notes that because the Northern District of Illinois has no connection to the events of this case, it is safe to assume that any such witnesses would not find the Northern District of Illinois more convenient than the Central District of California.

Although largely unaddressed by plaintiffs, the court must also consider public interest factors, which include: (1) the relation of the community to the occurrence at issue in the litigation and the desirability of resolving the controversies in their locale; (2) the court's familiarity with the applicable law; and (3) the congestion of respective court dockets and the prospect for earlier trial. Georgouses v. NaTec Resources, Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997). The first factor weighs in favor of transfer to the Central District of California because it is where some of the acts related to this action occurred and allegedly continue to occur, providing the Central District of California with a compelling interest in this case. See Carter v. Clark Material Handling Co., No. 97-C-4424, 1998 WL 89244, *3 (N.D. Ill. Feb. 17, 1998). Additionally, several of the parties are located there or have connections to the district.

The second factor also weighs in favor of transfer. The Central District of California is of course familiar with the federal copyright infringement law at issue. Plotkin v. IP Axess, Inc., 168 F. Supp. 2d 899, 905 (N.D. Ill. 2001). The Central District of California is also well equipped to handle the two Illinois state law claims, as "courts often are called upon to decide substantive legal questions based upon another state's laws." Id. Moreover, it is doubtful that

plaintiffs can even maintain an action under Illinois law, and even if they can 17 U.S.C. § 501 likely preempts plaintiffs deceptive trade practices and consumer fraud claims. See, e.g., Defined Space, Inc. v. Lakeshore East, LLC, 797 F. Supp. 2d 896, 901-03 (N.D. Ill. 2011) (dismissing as preempted by the federal copyright act plaintiffs' claims alleging violations of Illinois statutes prohibiting consumer fraud and deceptive business and trade practices).

Finally, the court must consider the dockets of the two districts in question. Plotkin, 168 F. Supp. 2d at 904 (utilizing Federal Court Management Statistics to evaluate the congestions of each courts' dockets and the prospect for an earlier trial). The median time from filing to trial in the Northern District of Illinois as of June 2014 is 35.4 months, while the same interval is only 21.3 months in the Central District of California. Additionally, the median length of time for disposition of all civil cases is 6.9 months in the Northern District of Illinois, but slightly shorter in the Central District of California at 5.6 months. Although these statistics do not shed light on the speed of litigating this specific type of case, generally the Central District of California is likely to process the instant case sooner, titling this final factor slightly in favor of transfer. Plaintiffs' suggestion that the court set an early trial date to account for any differences between time to trial here and in the Central District of California fails to recognize that this court already has a dense schedule that cannot be easily manipulated to accommodate plaintiffs' whims.

**CONCLUSION**

For the reasons discussed above, defendants' motion to transfer venue to the Central District of California is granted.

**ENTER:**     **December 22, 2014**

_____
       **Robert W. Gettleman**
       **United States District Judge**